COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


ALEXANDER M. RINALDI

                                                            OPINION BY
v.        Record No. 1031-08-2                 JUDGE LARRY G. ELDER
                                                            DECEMBER 16, 2008
LORI A. RINALDI


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

Barry Randolph Koch (Inman & Strickler, P.L.C., on brief), for
appellant.

Richard L. Locke (Shannon S. Otto; Locke Partin & DeBoer, on
brief), for appellee.


Alexander M. Rinaldi (husband) appeals from an award of equitable distribution and

attorneys' fees issued as part of the dissolution of his marriage to Lori A. Rinaldi (wife).  On

appeal, he contends the trial court's classification and division of some of the property was error

and that its order to him to pay a portion of wife's attorney's fees was also error.  We hold the

trial court's classification and division of the parties' property and the earnings thereon was

supported by the evidence.  We hold the trial court did not err in awarding wife a portion of her

attorney's fees, and we decline to make an award of fees on appeal.  Thus, we affirm the award

of equitable distribution.

I.  BACKGROUND

When husband and wife married in 1997, husband owned a home on Floyd Avenue in

Richmond that became the marital residence.  He had purchased the home himself and was

solely obligated on the mortgage until the parties refinanced the property during the marriage.

When the parties married in 1997, wife had just finished law school and had student loans outstanding at that time. Husband was working as a hospital laboratory technician, but after a period of time, the parties agreed that husband, who perceived that job as overly stressful, would reduce his hours so that he could operate his own construction company. Husband eventually ceased to be employed by the hospital, working only at his construction business, while wife worked as an attorney. The parties had two sons born during the marriage, in 2002 and 2004, and they separated in 2006.

In 1999, husband received an inheritance from his mother. When the parties purchased a parcel of riverfront property for $105,000 that same year, husband contributed $25,750 of his inheritance toward the down payment. The parties contributed $500 of marital funds to the down payment, and they used marital funds to make mortgage payments totaling $18,120.

After purchasing the property, the parties added a dock. They hired a contractor to put in the pilings at a cost of $5,950, and then the parties, along with friends and family, constructed the dock atop the pilings. Wife conceded the cost of putting in the pilings "probably did come from [husband's] inheritance," and husband later testified that it did. He conceded that at least some of the lumber for the dock was paid for from a joint account containing marital funds. The appraiser indicated the presence of the dock increased the property's value by about $20,000.

The parties also installed a septic system on the property at a cost of $3,450, which husband paid from his separate inheritance. Husband testified that installation of the septic system increased the value of the property by $12,000. When wife was asked whether it "was a valuable addition to the property," she said, "We haven't used it." (When husband's counsel pointed out that a septic system would be required to obtain an occupancy permit for any residence that might be built on the property, wife agreed.) When counsel then said, "So that added materially to the value of the property, didn't it?," wife responded, "Only the cost of what

it cost." Counsel continued, "You don't think it was worth more as a building site where you could actually connect to build the house and get an occupancy permit than it would be otherwise if it didn't have that? It had to have added something to the value." When wife's counsel objected, stating, "Is he testifying? She already answered no," the trial court responded, "I think it does. Go on to the next question."

Wife offered evidence that her earnings from her employment during the marriage exceeded $543,000 whereas husband's earnings for that same period were approximately $200,000. Wife testified husband's income from his construction business was sporadic and that her income was used to pay the mortgage on the Floyd Avenue and riverfront properties, the utility expenses, and wife's student loan payments. She also testified that husband's income ranged from $200 to $600 every two weeks and that it typically covered their groceries and gasoline for their vehicles. Wife also testified that husband used marijuana on a daily basis for the duration of their marriage and that it negatively impacted the family in both monetary and non-monetary ways. She said husband's daily marijuana use negatively impacted his willingness to work full-time and that because he often slept late, it often took him two to three times longer than necessary to finish his construction jobs. Thus, she testified it reduced the amount of income he earned and, additionally, that he smoked at least $5 worth of marijuana per day.

She also testified about the non-monetary impact of husband's marijuana use. She said that because she refused to allow husband to smoke marijuana around the children, he was absent from the home or at least from their presence every morning and evening in order to do so. She testified that in the mornings, she would wake up, dress and feed the children and transport them to daycare before husband arose, and that in the evenings, husband would leave the house or go to the unfinished basement to smoke marijuana, leaving wife to care for the children and the household. Wife testified that she was left to do the housework, manage the parties' finances,

grocery shop, cook, and care for the children. Wife testified that husband's marijuana addiction, its impact on the family, and his refusal to obtain treatment caused the irreconcilable breakdown in the marriage.

The parties agreed on the fair market value of the Floyd Avenue and riverfront properties but disagreed over how the parties' respective shares of the equity should be calculated and divided. Husband asked that the marital share of each of the two properties be calculated pursuant to the Brandenburg formula as recognized in Hart v. Hart, 27 Va. App. 46, 6l-66, 497 S.E.2d 496, 505-06 (1998). Wife asked the court to apply our holding in Keeling v. Keeling, 47 Va. App. 484, 624 S.E.2d 687 (2006), to calculate the marital share of the riverfront property. As to the overall division of the marital assets, husband sought a dollar-for-dollar credit pursuant to Code § 20-107.3(D)(10) for half the amount by which marital income was used to reduce wife's student loan debt and asked that the remaining marital shares of the real estate be divided equally. Wife asked the court to divide the marital shares of the two pieces of real estate with 75% to her and 25% to husband based on her larger monetary and non-monetary contributions to the marriage and husband's negative monetary and non-monetary contributions. Husband sought an equal division.

The trial court ruled as follows with respect to the riverfront property:

> [The property] has an agreed upon value of $265,000.00, with a mortgage balance of $40,630.00, leaving equity of $204,370.00. . . . The down payment was $26,250.00, which is the purchase price less the initial mortgage amount. The parties agree it should be classified as hybrid.
>
> The Court further believes that in analyzing the improvements made to the dock which increased the value of the home by $20,000,00, the value should be added to the property and not as a credit to the husband as stated in Hart v. Hart, 27 Va. App. 46 (1998). Marital funds were used to pay on the principal mortgage in the total sum of $18,120.00. The Court adopts the amounts presented by Mrs. Rinaldi stating that the marital contribution to the river property is the $500.00 downpayment,

- 4 -

$20,000.00 for the new dock, and $18,120.00 mortgage contributions, for a total marital contribution of $38,620.00. Husband's separate contribution is in the amount of $25,750.00, for a total contribution of $64,370.00.

Having considered the two prevalent formulas for determining separate and marital interests, the Court believes that the Keeling formula is the better formula under the facts and evidence of this case. The Court adopts the calculations by the Keeling formula as stated in [wife's] latest brief and adopts the calculations therein, awarding Mr. Rinaldi $42,100.22, representing 20.6% of the equity in the property.

The Court considered Mrs. Rinaldi's income and the market increase in real estate values during this period of time which created the large equity in the property.

Wife's calculations on brief submitted to the trial court and expressly adopted by the court were as follows:

Husband's separate contribution to the River Property was $25,750. The purchase price of the property was $105,000, plus the addition of the dock valued at $20,000, for a total investment of $125,000. Husband's separate contribution equaled 20.6% of the purchase price plus the dock. The total equity in the River Property at the time of trial was $204,370 ($265,000 less mortgage balance of $60,630). Accordingly, Husband should receive 20.6% of the equity (or net sales proceeds) in the River Property, or $42,100.22, as payment for his separate contribution under the Keeling formula.

The remaining equity (or net sales proceeds) . . . is marital property . . . .

After calculating the amount of equity in each property that was separate and marital, the court ordered that the marital equity be divided with 60% to wife and 40% to husband. In making that division, the court stated as follows:

The Court has considered the various factors required by 20-107.3(E) in all respects and weighed them in making the decision. The Court notes that the parties had been married almost ten years and two children were born of the marriage. Both parties have enjoyed considerable income, though Mrs. Rinaldi's income is considerably higher than Mr. Rinaldi's income. She has made over $500,000 in the last seven years, while Mr. Rinaldi has made

> a little over $200,000. Apparently among the reasons for husband's lesser income was his use of marijuana.
>
> Otherwise, the parties appear to be in good health. Both are employed and both have made monetary and nonmonetary contributions to the marriage. Mr. Rinaldi has made nonmonetary contributions to the marriage in his renovations to the two pieces of real estate as indicated above. At this point there are no particular tax consequences resulting from the equitable distribution that were brought to the attention of the Court. The grounds for the divorce and other considerations considered by the Court were mentioned in the above determination of the equitable distribution award.

When husband objected to the trial court's opinion letter, the trial court ruled that it would not "reiterate its earlier opinion letter other than to say it considered all of the points raised by both counsel in its equitable distribution award as required" by Code § 20-107.3 and that it "weighed many factors, including loans, non-monetary contributions of both parties including caring for the house, renovations to the property, caring for the children, and other duties performed by both parties."

As to wife's request for attorney's fees, the trial court ruled as follows:

> Mrs. Rinaldi has asked for attorney's fees to which [husband] has not responded. Mrs. Rinaldi's income is considerably more than the husband's, and the parties' disagreements have increased the attorneys' fees on both sides. Considering all of the factors, the Court believes Mr. Rinaldi should pay Mrs. Rinaldi the amount of $5,000 in attorney's fees.

## II. ANALYSIS

### A. EQUITABLE DISTRIBUTION

On appeal, we consider the evidence in the light most favorable to wife, the party who prevailed in the trial court. Wilson v. Wilson, 12 Va. App. 1251, 1254, 408 S.E.2d 576, 578 (1991). "The judgment of a trial court sitting in equity, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 423, 364 S.E.2d 232, 237 (1988).

1. Calculation of the Marital Share of Real Estate

Husband contends the trial court erred in applying the Brandenburg formula, see Hart, 27 Va. App. at 64-65, 497 S.E.2d at 505 (citing Brandenburg v. Brandenburg, 617 S.W.2d 871 (Ky. Ct. App. 1981)), to divide the marital equity in the residence on Floyd Avenue while simultaneously using the method applied in Keeling, 47 Va. App. at 490-93, 624 S.E.2d at 689-91, to calculate the marital interest in the parcel of land on the river that the parties acquired during the marriage as tenants by the entireties. He argues that the court's application of Keeling was erroneous and that it should be required to apply Brandenburg to the calculations for both properties. We hold the trial court's application of Keeling to calculate the separate and marital shares of the hybrid riverfront property achieved an equitable result and, therefore, was not error.

"We have not adopted an exclusive method for determining how to apportion the increase in value [of a hybrid asset as between marital and] retraced separate property." Martin v. Martin, 27 Va. App. 745, 753, 501 S.E.2d 450, 454 (2006) (en banc). "In Hart v. Hart, 27 Va. App. 46, 65-66, 497 S.E.2d 496, 505 (1998), we approved the 'Brandenburg formula' as one method for ascertaining the value of the separate and marital components of hybrid property in relation to the original contributions," but we have emphasized that "other methods may be equally acceptable." Id.; see Hart, 27 Va. App. at 66 n.4, 497 S.E.2d at 505 n.4 ("By approving [the Brandenburg] formula, we do not intend to imply that this is the only acceptable method of tracing and determining the marital and separate property interests of hybrid property."). We held in Keeling that where

> (1) hybrid property is obtained by means of both (a) a significant down payment of separate property and (b) a significant joint mortgage; (2) the equity in the property increases significantly due primarily to market forces; and (3) no evidence establishes that either the separate down payment or the marital loan contributed disproportionately to the couple's ability to acquire and hold the property, a court does not abuse its discretion in concluding that a

> strict application of the <u>Brandenburg</u> formula would yield an unfair
> result.

<u>Keeling</u>, 47 Va. App. at 491, 624 S.E.2d at 690. Under these circumstances, we held, a strict application of the <u>Brandenburg</u> formula may not adequately take into account the extent to which the parties' obligation on the loan allowed them to hold the property in order to benefit from the passive increase in equity.[1] <u>Id.</u> The alternate method of calculation we approved in <u>Keeling</u> involved

> (1) compar[ing] husband's separate contributions . . . to the original purchase price . . . , yielding a [percentage] figure of . . . separate property contributed, and (2) giv[ing] husband a share of the [total] equity in the same percentage as his contribution to the purchase price, . . . for a total separate share . . . including a return of his separate property and earnings thereon.

<u>Id.</u> at 488, 624 S.E.2d at 688.

In the Rinaldis' case, husband made a down payment of 24.5% of the original purchase price of the riverfront property, about the same percentage as the down payment in <u>Keeling</u>, and the property, excluding the addition of the dock, appreciated primarily due to market forces by more than 130%, a percentage increase even greater than the percentage involved in <u>Keeling</u>. Further, the evidence did not compel a finding that "the separate down payment . . . contributed disproportionately to the couple's ability to acquire and hold the property." <u>Id.</u> at 491, 624

---

[1] <u>Keeling</u> involved a husband's contribution of the entire down payment and various expenses associated with refinancing the home, in an amount equal to 27.5% of the purchase price of the property, and the parties were jointly liable on a mortgage for the remainder of the purchase price for the duration of their seven-year marriage. 47 Va. App. at 488, 624 S.E.2d at 688-89. The parties made mortgage payments but also engaged in further borrowing against the property and experienced a net decrease in their mortgage principal balance of only $9,000. <u>Id.</u> at 487, 624 S.E.2d at 688. The overall value of the property more than doubled during the marriage, increasing in value by 109%. <u>Id.</u> at 489, 624 S.E.2d at 689. We concluded that a strict application of <u>Brandenburg</u>, which would have taken into consideration only the amount by which their mortgage payments reduced the principal loan balance and the equity attributable to that amount, would have been unfair and justified the trial court's decision to use an alternate method. <u>Id.</u> at 491, 624 S.E.2d at 690.

S.E.2d at 690. Thus, the trial court did not abuse its discretion in concluding that the approach used in Keeling was an appropriate method for calculating the separate and marital shares of the riverfront property. The approach used by the trial court achieved an equitable result and, therefore, did not constitute error. Whether application of the Brandenburg formula would also have achieved an equitable result is simply not dispositive.

The trial court's application of the Keeling approach to calculate the marital equity in the riverfront property while using Brandenburg to calculate the equity in the Floyd Avenue property also did not constitute an abuse of discretion because, again, the result was equitable. The Floyd Avenue property was originally husband's separate property, which husband had acquired in his own name and made mortgage payments on for eight years prior to the parties' marriage, and wife made no claim that, absent her assistance, husband would have been unable to pay the mortgage on the Floyd Avenue property. As to the riverfront property, by contrast, the parties purchased it jointly during the marriage, and although husband made a down payment of approximately 25% from his separate funds, the parties were jointly liable on the mortgage. Further, wife averred and the evidence supported a finding that husband's income and other obligations at that time were such that the parties' joint obligation on the loan was necessary for them to obtain and make regular payments on the loan. Because the trial court's disparate treatment of the two properties achieved an equitable result, the trial court's decision to take such an approach did not constitute an abuse of discretion.

We also conclude the trial court was not required to give husband credit for the additional sums he contributed to improvements on the property. Under settled principles, "It is the *value* that improvements add to the property, not their cost, that is the proper consideration because the court is apportioning the *equity* in the hybrid property when it traces the sources of contributions to that property." Hart, 27 Va. App. at 66, 497 S.E.2d at 505 (first emphasis added). Further, all

property acquired during the marriage is presumptively marital, and the party claiming a separate interest in the hybrid property from those improvements bears the burden of proving their value to the satisfaction of the trial court. E.g. Rhabaran v. Rhabaran, 26 Va. App. 195, 208-09, 494 S.E.2d 135, 141 (1997).

Here, husband offered evidence of the cost of the pilings used in the construction of the dock, $5,950, and the amount by which the completed dock added to the value of the property, $20,000, but he failed to offer evidence as to how much of the $20,000 increase in equity was attributable to the pilings. Similarly, he offered evidence that installation of the septic system cost $3,450 and his opinion that it increased the value of the property by $12,000,[2] but the trial court was not required to accept this testimony of value as credible. Further, wife's testimony, viewed in the light most favorable to wife, also did not establish the extent to which the addition of the septic system added to the value of the property.

Husband contends next that the trial court erred in accepting wife's calculations applying the approach used in Keeling. Wife contended the court should take the $105,000 purchase price of the property and add to it the amount of increase in equity in the property created by the addition of the dock, $20,000, and use the sum of the two figures, $125,000, to determine the percentage share of husband's separate down payment. These figures yield a separate percentage

---

[2] Wife contends husband failed to preserve for appeal his claim for a credit for the cost of installing the septic tank. We note husband's comments on his exhibit at trial showing his calculation of the division of the equity in the riverfront property included a request for "adjustment for Husbands [sic] contribution to property paid by separate funds. Septic: $3,450.00, Dock $5,950, and real estate taxes paid of $887.68 plus credit for reduction in student loans of Wife." Husband, in his post-trial brief, asked for credit of "at least $5,900.00 for the out of pocket costs paid by Husband from his separate funds for improvements." Finally, in endorsing the final order, he objected "for all the reasons stated orally and in the memorandum filed herein, *and as shown by the evidence at trial*, particularly as to the computations of the respective shares in the marital real estate and the specific methods of computation." (Emphasis added.) These objections were sufficiently specific to put the trial court on notice of husband's objection regarding the septic tank.

share for husband of 20.6% rather than the 24.5% yielded without including the $20,000 of equity attributable to the dock. We agree that the court's inclusion of the $20,000 in the purchase price did not precisely follow the approach used in <u>Keeling</u> because <u>Keeling</u> involved only passive appreciation and compared Mr. Keeling's separate contribution toward the purchase price of the property to the total purchase price of the property. However, as we have said repeatedly, a court is not required to apply any particular formula to trace the separate and marital property interests and to calculate the earnings on those respective interests as long as it reaches an equitable result. <u>See, e.g.</u>, <u>Martin</u>, 27 Va. App. at 753, 501 S.E.2d at 454; <u>Hart</u>, 27 Va. App. at 66 n.4, 497 S.E.2d at 505 n.4.

Here, the evidence supports a finding that the trial court's classification of the various components of the riverfront property were equitable and, thus, were not an abuse of discretion. Under a strict application of <u>Keeling</u>, husband's separate interest in the riverfront property would have been $45,170.65 rather than the $42,100.22 calculated by the trial court.[3] However, nothing in our case law holds that a spouse who retraces separate funds used to make a down

---

[3] As discussed <u>supra</u> in the text, a proper application of the approach used in <u>Keeling</u> compares husband's initial separate contribution of $25,750 to the $105,000 purchase price of the riverfront property, indicating husband's separate share of the property at the time of purchase was $25,750/$105,000, or 24.5%. Under a strict application of <u>Keeling</u>, the court would then use this figure to calculate husband's separate share of the equity in the property that resulted from passive appreciation. Given total equity in the property of $204,370, the amount of equity resulting from passive appreciation was $204,370 minus the equity attributable to the dock, $20,000, for total passive equity of $184,370. Multiplying this figure by husband's 24.5% share would yield a separate interest for husband of $45,170.65, rather than the figure of $42,100.22 used by the trial court.

Using the total equity figure of $204,370 less husband's separate share of $45,170.65 (representing the return of his initial down payment and the passive appreciation thereon in an amount equal to the appreciation provided on the marital share) yields marital equity of $159,199.35, of which husband's 40% share would be $63,679.74. Thus, under a strict application of <u>Keeling</u> that also accounts for equity resulting from the addition of the dock, husband's separate share of $45,170.65 plus his marital share of $63,679.74 would equal a total interest for husband in the riverfront property of $108,850.39. The trial court actually awarded husband the sum of $107,008.13, only $1,842.26 less than the amount yielded by a strict application of <u>Keeling</u>.

payment on property held by the spouses jointly must be awarded appreciation thereon in the exact percentage in which the trial court awards appreciation on the marital share. In Keeling, we approved an approach that calculated appreciation equally where "no evidence establishe[d] that either the separate down payment or the marital loan contributed disproportionately to the couple's ability to acquire and hold the property." 47 Va. App. at 491, 624 S.E.2d at 690. The facts in the Rinaldis' case, by contrast, support a finding that wife's significantly higher income, which was marital property, contributed disproportionately to the parties' ability to hold the property long enough to benefit from market appreciation. This factual difference justified the trial court's awarding what amounted to a slightly higher rate of return on the marital share of the riverfront property than on husband's separate share. Thus, we conclude the court's classification of the parties' respective interests in the riverfront property did not constitute an abuse of discretion.

### 2. Percentage Division of the Marital Share of Real Estate

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge . . . ." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not quantify or elaborate exactly what weight was given to each of the factors" as long as its "findings . . . [are] based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). "Virginia law does not establish a presumption of equal distribution of marital assets. It is within the discretion of the court to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3(E) require." Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998) (citations omitted). "A circuit court, therefore, need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines." Robbins v.

Robbins, 48 Va. App. 466, 480, 632 S.E.2d 615, 622 (2006) (affirming circuit court's use of "a 65/35 division of assets").

Those factors for consideration by the court include "'[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of [the] marital property of the parties.' . . . . [B]oth affirmative and negative monetary contributions to the marital partnership are to be considered." Barker v. Barker, 27 Va. App. 519, 537, 500 S.E.2d 240, 248 (1998). Thus, "where marital funds are used to pay the separate debts of one of the parties, a court may properly consider that fact as a negative monetary contribution to the marital property." Id. at 537, 500 S.E.2d at 249. However, nothing in the equitable distribution statute or our case law entitles a spouse to a dollar-for-dollar credit for payment of the other spouse's separate debt with marital funds. Id. at 539, 500 S.E.2d at 250. Although wife used marital funds to pay her student loan debt during the marriage, the evidence supported a finding that her earning capacity during the marriage was significant due to her law degree and, thus, that husband received a benefit associated with payment of wife's law school loan debt.

Furthermore, the evidence as a whole, viewed in the light most favorable to wife, supports the trial court's conclusion to award wife 60% of the marital share of the real estate. The evidence, viewed in the light most favorable to wife, supports a finding that she made larger monetary and non-monetary contributions throughout most of the course of the parties' marriage. Wife worked as an attorney throughout the parties' marriage; husband, trained as a laboratory technician, operated his own construction business during most of the parties' marriage. Although wife agreed to husband's plan to stop working as a laboratory technician in order to develop his construction business, wife testified that husband failed to work diligently at his construction job, choosing instead to sleep late and indulge his marijuana habit. The evidence supported a finding that husband earned only about $200,000 during the course of the parties'

marriage and that wife's income of about $500,000 during the same period paid the mortgages on the parties' two properties and most of their bills other than those for groceries and gasoline. Wife testified further that although husband was a good father to their two sons when he was present, he slept late into the morning leaving her to care for the children during that time, and that he was not present for a period of time every evening, as well, because wife would not let him smoke marijuana in the presence of the children. Wife testified that husband's marijuana addiction, his refusal to obtain treatment for it, and its negative impact on his monetary and non-monetary contributions to the family supported her request for an award of greater than fifty percent of the marital equity in the two properties. The trial court expressly stated it considered all Code § 20-107.3(E) factors, including wife's use of marital funds to pay her student loans, in making this disposition of the marital property. We hold the evidence, viewed in the light most favorable to wife, supports this award.

## B. ATTORNEYS' FEES

### 1. In the Trial Court

Whether to award attorney's fees in a divorce matter is left to the sound discretion of the trial court. See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). "Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001)). Factors to be considered may include a party's ability to pay a fee, Cirrito v. Cirrito, 44 Va. App. 287, 299-300, 605 S.E.2d 268, 274-75 (2004), the party's degree of fault in bringing about the dissolution of the marriage, Poliquin v. Poliquin, 12 Va. App. 676, 682, 406 S.E.2d 401, 405 (1991), and whether the party unnecessarily increased litigation costs

through unjustified conduct calculated to delay resolution of the proceedings, <u>Northcutt v. Northcutt</u>, 39 Va. App. 192, 200-01, 571 S.E.2d 912, 916 (2002).

Here, the record compels the conclusion that the court did not abuse its discretion in ordering husband to pay $5,000 toward wife's attorney's fees and costs, which totaled more than twice that amount. Although wife earned more than husband, the evidence supported a finding that husband bore a greater degree of fault in bringing about the dissolution of the marriage and that he engaged in repeated behavior that delayed resolution of the proceedings below, including actions necessitating wife's filing of multiple motions to compel and motions for issuance of rules to show cause, thereby unnecessarily increasing wife's attorney's fees. On these facts, the award of attorney's fees did not constitute an abuse of discretion.

## 2. On Appeal

Wife seeks an award of attorney's fees incurred on appeal. We decline that request. <u>See</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Although we have held husband's appeal to be without merit, no prior case law addressed the issue of applying the <u>Brandenburg</u> formula to one parcel of property while applying the rationale of <u>Keeling</u> to another. <u>Estate of Hackler v. Hackler</u>, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004) (declining to award fees to an appellee where the appeal "addressed appropriate and substantial issues"). Further, the record shows wife earned substantially more than husband over the course of the parties' marriage and continues to have a greater earning capacity based on her law degree. Thus, we see no basis for an award of fees on appeal.

## III.

For these reasons, we hold the trial court's classification and division of the parties' property and the earnings thereon was supported by the evidence. We hold the trial court did not

err in awarding wife a portion of her attorney's fees, and we decline to make an award of fees on appeal. Thus, we affirm the trial court's equitable distribution award.

Affirmed.