COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McCullough and Senior Judge Haley
Argued at Fredericksburg, Virginia


NINA MARIE JIRINEC

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1220-15-4                  JUDGE STEPHEN R. McCULLOUGH
                                                MARCH 22, 2016
VLADIMIR JIRINEC


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Grace Burke Carroll, Judge

            Robert J. Surovell (Tashina M. Harris; Surovell Isaacs Petersen &
            Levy, PLC, on briefs), for appellant.

            David R. Clarke (Lauren A. Fredericksen; Blankingship & Keith,
            P.C., on briefs), for appellee.


        Nina Marie Jirinec challenges the trial court's rulings with respect to the equitable

distribution of a specific piece of real property, in calculating Vladimir Jirinec's income for

purposes of child support, in finding that she had unclean hands with respect to the child custody

litigation, and in failing to award her additional attorneys' fees.  We affirm in part and reverse in

part.

                                        BACKGROUND

        The Jirinecs, whom we will refer to as husband and wife for the sake of simplicity, were

married on March 31, 2012.  They separated permanently on November 7, 2013.  Wife filed for

divorce on the grounds of adultery on November 8, 2013.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. CHILD CUSTODY

Wife testified that during the marriage, she found text messages on husband's phone telling his girlfriend that he was going to stay in the marriage as long as he could to gain custody of the couple's as yet unborn daughter. The parties' daughter was born on November 8, 2013, the day after they separated. Wife testified that husband initially took the position that their daughter should stay in his home and that wife could see her newborn child one hour each day.

Husband testified that he asked for joint custody with limited overnight visitation. According to husband, wife's initial position was that there should be no joint custody, that she alone should have custody. Husband also testified that wife thought he should have no overnight visits with the child until after she was two years old and that husband could visit for a few hours on a weekly or biweekly basis. In response to these diametrically opposed positions, the parties sought mediation.

The parties ultimately reached an agreement on custody and visitation. The court entered an order reflecting the parties' agreement on April 25, 2014.

## II. CHILD SUPPORT

Before, during, and after the marriage, husband "flipped" houses, i.e., he bought, improved, and resold real estate. Both prior to and during the marriage, wife assisted husband with these endeavors, both with her labor and her funds. These transactions were generally profitable, although the profits fluctuated significantly. The record reflects that husband bought and sold five properties shortly before, during, and immediately after the marriage.

Husband had other sources of income: his regular job at the University of Maryland, commissions he received from being a real estate agent, and income from rental housing. He testified that his income in 2015 would drop by two percent due to budget cuts by his employer, the State of Maryland.

III. EQUITABLE DISTRIBUTION

After he moved out of the marital residence, husband purchased a condominium at 2621 Walter Reed Drive to use as his residence.[1] Husband spent $260,000 to acquire this property. Of that amount, $60,000 was a loan from his family, and the rest was in cash from his bank account. Approximately six months after the purchase, husband obtained a home equity line of credit, or HELOC, on the property. The HELOC was for a maximum amount of $240,000.

On February 28, 2014, after he had already been separated from wife, husband acquired an investment property on Rio Drive, which he improved and sold in December of 2014. Husband borrowed approximately $100,000 from Vladimir Kovac to purchase the property on Rio Drive. Husband drew from the HELOC on Walter Reed Drive to repay the loan to Kovac.[2] Before husband sold Rio Drive, he borrowed money again from Mr. Kovac, and again repaid him when the property was finally sold. The sale of the Rio Drive property netted $62,550 over the purchase price.

Before the equitable distribution hearing, wife asked the court to use an alternate valuation date for husband's home on Walter Reed Drive. Wife argued that this property was at least in part marital. In 2014, this property appraised for $305,000. Wife argued that the court should employ an alternate valuation date, because husband borrowed heavily against the property post-separation, thus "diminish[ing] [wife's] marital estate while enhancing his own separate estate." Wife asked the court to value the property before it was encumbered by the HELOC. Husband contended that

---

[1] This was husband's second property on Walter Reed Drive. He had bought a different house at a different address on Walter Reed Drive, 2625 Walter Reed Drive, as an investment property and sold it about six months after the parties had wed. That property is not at issue in this appeal.

[2] Husband testified that he drew $50,000 from the HELOC to make improvements to the house on Rio Drive before he sold it and that he used the HELOC to pay down credit card balances, much of which, he testified, were real estate related.

Walter Reed Drive was his separate property, because it was purchased with funds that could be traced back to separate funds, namely, the funds from the sale of the residence he acquired before the marriage.

The court held that the Walter Reed Drive property was a mixed property, rejecting husband's argument that the Walter Reed Drive property was separate. The court granted wife's motion for an alternate valuation date of the Walter Reed Drive property. The court also repeatedly stated that the proceeds from the sale of Rio Drive were marital property. The court then stated that "the Rio Drive property purchased during the marriage with marital funds and marital sweat equity, as it were, non-monetary contributions by both parties [were] made." The court then evenly divided the $62,551 net proceeds from the sale, stating that "[w]ith regard to the value of the 2621 Walter Reed Drive property, the 31,275.50 is to be awarded to [wife]."

Wife filed a motion to reconsider, in which she pointed out that Rio Drive was not a marital asset. She further argued that it was the marital equity in the Walter Reed property that was a marital asset to be divided. The court stated that it would stand by its previous ruling.

## IV. ATTORNEYS' FEES

The court awarded over $30,000 in attorneys' fees and costs to wife. With respect to the child custody litigation, the court found that "both parties bear responsibility for their positions of unreasonableness, the both of them; and I'm not going to award costs for that or fees for that," adding that "neither party necessarily came to the Court with clean hands with regard to attorneys['] fees and the custody issues." In addressing wife's motion to reconsider, the court explained that "both parties have to assume the outcome of their behavior" and "if they're going to have a scorch-the-earth mentality with regard to their custody and visitation, I'm not going to award costs and [attorneys'] fees for that."

ANALYSIS

I. THE COURT ERRED IN ITS EQUITABLE DISTRIBUTION OF THE WALTER REED DRIVE
   PROPERTY AND THE SALES PROCEEDS OF RIO DRIVE.

In her first two assignments of error, wife contends that the trial court erred in failing to

correctly value and equitably distribute the marital equity in the Walter Reed Drive property and

in its characterization and classification of the proceeds from the sale of the Rio Drive property.

> [U]nless it appears from the record that the trial judge has
> abused his discretion, that he has not considered or has misapplied
> one of the statutory mandates, or that the evidence fails to support
> the findings of fact underlying his resolution of the conflict in the
> equities, the equitable distribution award will not be reversed on
> appeal.

Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990).

The Code establishes three categories of property to be classified in a divorce: separate,

marital, and part marital and part separate. See Code § 20-107.3. First, with respect to the Rio

Drive property, husband acquired it as an investment after the parties were last separated, and he

acquired it using a loan from Kovac. He later sold the property. The trial court classified the

Rio Drive property as marital, stating that it was purchased "with marital funds and marital sweat

equity, as it were, non-monetary contributions by both parties [were] made." The evidence is

unrefuted, however, that Rio Drive was not purchased with marital funds and that there was no

"marital sweat equity" for that property. Wife acknowledged that she had no role in purchasing

or renovating this property. Property acquired by a party after the last separation is presumed to

be separate property, although this presumption is rebuttable. Code § 20-107.3(A); Dietz v.

Dietz, 17 Va. App. 203, 211-12, 436 S.E.2d 463, 468-69 (1993). Nothing in the record rebuts

this presumption.

This brings us to the Walter Reed property. In classifying it, the trial court rejected

husband's argument that it was separate property, and concluded instead that it was at least in

part hybrid property because it was purchased in substantial part with marital funds. The funds were marital funds because over time, the account containing the proceeds from husband's sale of his pre-marital home had been commingled with marital funds, such as husband's paychecks and his tax returns. This conclusion is not challenged on appeal, and it is consistent with our caselaw. See Dietz, 17 Va. App. at 210, 436 S.E.2d at 468 (stating that property is marital, although acquired post-separation, when it is obtained with marital assets or as a result of the efforts of either party expended during the marriage). The court also granted wife's motion for an alternate valuation date. But the court never took the required next step of actually valuing the marital portion of the Walter Reed Drive property or distributing that marital portion. Instead, the court distributed evenly the proceeds from the sale of *Rio Drive*, a non-marital asset. In several instances, the court appears to have confused the Rio Drive and Walter Reed Drive properties. For example, the court stated that there was "$62,551 used to purchase the 2621 Walter Reed Drive property" – in fact, those were the *proceeds* from the sale of the *Rio Drive* property.

Husband argues that the trial court "presumably" traced the separate funds he brought into the marriage from the sale of his house through several of his real estate transactions and ended up concluding that the proceeds of the transaction at Rio Drive constituted the marital share of the Walter Reed Drive condominium. The difficulty with this argument is that it simply cannot be squared with the record and with the trial court's stated rationale.

We reverse the trial court's inclusion of the sale proceeds from Rio Drive into the marital estate, and we remand with instructions to value the marital portion of the Walter Reed Drive property and to equitably distribute that marital portion.[3] Wife asks us to award her $105,000, or

---

[3] Our resolution of this issue renders moot the portion of wife's second assignment of error, which challenges the trial court's failure to find that husband engaged in waste of marital assets.

one-half of the pre-encumbrance marital portion of the Walter Reed Drive property.  The equitable distribution of marital property according to the statutory factors is a matter for the trial court to decide on remand, not this Court.

II. HUSBAND'S INCOME FOR PURPOSES OF CHILD SUPPORT MUST INCLUDE HIS INCOME FROM BUYING AND SELLING REAL ESTATE; HOWEVER, THE COURT COULD CREDIT HUSBAND'S TESTIMONY CONCERNING THE DROP IN HIS SALARY.

"The determination of child support is a matter of discretion for the trial court, 'and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 703 (1999) (quoting Vissicchio v. Vissicchio, 27 Va. App. 240, 253, 498 S.E.2d 425, 432 (1998)).  However, an error of law is by definition an abuse of a trial court's discretion.  Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998).

Code § 20-108.2(C) directs trial courts to comprehensively include "all income from all sources" when calculating a parent's income for purposes of child support.  "Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur."  Keyser v. Keyser, 2 Va. App. 459, 461, 345 S.E.2d 12, 13 (1986).  All income includes irregular income.  Cranwell v. Cranwell, 59 Va. App. 155, 166-67, 717 S.E.2d 797, 802 (2011).  We have held, however, that trial courts need not "speculate as to what the circumstances may be in the future."  Howe v. Howe, 30 Va. App. 207, 216, 516 S.E.2d 240, 245 (1999).  "[A]fter determining the presumptive amount of support according to the schedule, the trial court may adjust the amount based on the factors found in Code §§ 20-107.2 and 20-108.1."  Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991) (emphasis in original).

There is no dispute that husband had, before, during, and after the marriage, engaged in buying and selling houses.  He acknowledged in his deposition that he was not doing more or

less of this activity than he had in the past. After he separated from wife, he bought and sold the property on Rio Drive. Although the parties disagreed on the *extent* of the profit these ventures had generated, there was no dispute that husband's activities in that regard were, in fact, a recurring source of additional income.

The court explained that there was no way to determine what that income would be and that this income was "erratic." We do not underestimate the difficulty of the task. Nevertheless, Code § 20-108.2(C) mandates its inclusion. There are ways to account for such income, such as by averaging fluctuating income over a period of years. See Patel v. Patel, 61 Va. App. 714, 727-28, 740 S.E.2d 35, 42 (2013). Regardless of the approach, husband's income from buying and selling houses must be included in calculating husband's total income for purposes of child support. We therefore hold that the trial court erred in declining to include this income in calculating husband's income for purposes of child support.

Husband argues that the fund he used for his house flipping activities, the proceeds from the sale of his pre-marital home, has now been depleted. That may be the case. However, the purchase and sale of the property at Rio Drive shows husband's ability to borrow money from others to continue his pattern of profitable buying and selling of real estate. The depletion of his fund may affect the profitability of his real estate ventures, but it evidently does not mean that husband is foreclosed from pursuing this source of income.

Wife also argues that the trial court erred by crediting husband's testimony that his base salary at the University of Maryland was cut by two percent. She asserts that husband's testimony in this connection is "speculative." Earlier in discovery, husband had disclosed salary information that did not include this decrease. He explained at trial, however, that while he started the year 2015 with an increase in salary, the state had afterwards cut his salary by two percent and that this development had "been in the papers." The hearing took place in

- 8 -

mid-February of 2015. If husband's salary was indeed cut by two percent, then those were the present circumstances upon which the court had to calculate his income. The trial court had "the opportunity to see and hear th[e] evidence as it [was] presented" and determine the "credibility of the witnesses and the weight [to be] accorded [to] the evidence." McKee v. McKee, 52 Va. App. 482, 492, 664 S.E.2d 505, 510 (2008) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). Applying this deferential standard of review, the trial court could credit husband's testimony in this regard and, accordingly, base husband's income calculation (in part) on his testimony.

### III. THE COURT DID NOT ABUSE ITS DISCRETION IN ITS LIMITED AWARD OF ATTORNEYS' FEES TO WIFE.

Wife assigns error to the trial court's failure to award her attorneys' fees in connection with the child custody litigation. She contends that the court's finding that she had "unclean hands" is not justified. Wife points out that husband was "conspiring" with his girlfriend to take the child away before the child was even born, that he took unreasonable positions that forced her to resort to expensive litigation, that he lied about his affair and other things, and that he falsely attempted to portray her as abusing drugs.

The record establishes that both sides took an intransigent and unrealistic approach with respect to child custody – until they eventually settled their differences with an agreed order. Although husband can be faulted for some of his conduct and for staking out an unrealistic position with respect to child custody and visitation, wife initially also took a position that was far more restrictive than the resolution the parties belatedly reached. She sought sole legal custody, and took the position that husband's first overnight visit would be after the child reached the age of two. She also took the view that he could visit with the child at wife's house for a few hours while she was in the house.

In denying fees for the child custody litigation, the court stated, "The Court finds that with regard to the custody conflict, that both parties bear responsibility for their positions of unreasonableness, the both of them; and I'm not going to award costs for that or fees for that." It explained, "it is apparent in this case that neither party necessarily came to the Court with clean hands with regard to attorneys['] fees and the custody issues, and the Court finds that I'm not going to award fees for that aspect of the case." The court later explained that "both parties have to assume the outcome of their behavior" and "if they're going to have a scorch-the-earth mentality with regard to their custody and visitation, I'm not going to award costs and [attorneys'] fees for that."

As the court's explanation following wife's motion for reconsideration makes clear, the trial court's ruling on attorneys' fees for the custody litigation rests chiefly on the notion that the court will exercise its discretion and deny attorneys' fees where both parties have staked out unrealistic and combative positions. The record suggests that the trial court was using the term "clean hands" in the colloquial rather than in the strict legal sense.[4] Although wife's position may constitute an understandable reaction to husband's behavior, it does not entitle her to attorneys' fees as a matter of law. Just as "[a]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion," Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987), the same is true of a trial court's decision to decline to award attorneys' fees. We perceive no abuse of discretion in the court's decision to decline to award attorneys' fees with regard to the child custody litigation.

---

[4] Even if the court had used the term in the strict legal sense, that would not change the answer. "Application of the doctrine turns upon the facts of each particular case and is therefore left to the sound discretion of the fact finder." Cline v. Berg, 273 Va. 142, 148, 639 S.E.2d 231, 234 (2007). Furthermore, "the doctrine is not absolute and should not be applied when the result would be inequitable . . . ." Id.

The trial court did award in excess of $30,000 in costs and attorneys' fees to wife. Beyond the specific issue of attorneys' fees for the child custody litigation, wife argues more broadly that she should have received still more fees based on the factors we articulated in Rinaldi v. Rinaldi, 53 Va. App. 61, 669 S.E.2d 359 (2008). In that case, we held that in determining an award of attorneys' fees, a trial court may consider "a party's ability to pay a fee, the party's degree of fault in bringing about the dissolution of the marriage, and whether the party unnecessarily increased litigation costs through unjustified conduct calculated to delay resolution of the proceedings." Id. at 78, 669 S.E.2d at 367 (citations omitted). The court may also consider disparities in income. See Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996).

The evidence established that the parties' incomes were comparable, so this was not a lopsided battle in terms of the resources available to the parties. The evidence also showed that husband's financial resources were significantly depleted after he paid off debt, including over $20,000 in wife's credit card debt, and from the purchase of a new residence and furnishings for that residence. We find no abuse of discretion with respect to the amount of attorneys' fees the trial court awarded.

### CONCLUSION

We reverse the trial court's classification and valuation of Walter Reed Drive and its distribution of the sales proceeds from Rio Drive. We likewise reverse the trial court's exclusion of husband's income from buying and selling real estate. This income must be included in

determining husband's total income for purposes of child support. We affirm the award of attorneys' fees. The case is remanded for further proceedings not inconsistent with this opinion.[5]

<u>Affirmed in part, reversed in part, and remanded.</u>

---

[5] Both sides request attorneys' fees in connection with this appeal. In light of the issues presented and our disposition, reversing in part and affirming in part, we deny both requests.