COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Huff, Raphael and Lorish
Argued at Arlington, Virginia


ARASTOO YAZDANI

                                                                    OPINION BY
v.        Record No. 1346-21-4                          JUDGE LISA M. LORISH
                                                              DECEMBER 13, 2022
SORAYA SAZEGAR


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa Bondareff Kemler, Judge

Adam Fleming for appellant.

Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


Arastoo Yazdani (husband) and Soraya Sazegar (wife) entered into a marital separation

agreement ("Agreement") resolving the issues in their pending divorce and agreeing to "reserve the

issue of Wife's request for . . . attorney[] fees . . . for arguments to be heard by the Alexandria City

Circuit Court" and "to follow the ruling of the Court upon the Court making its determination

regarding" attorney fees.  Husband now appeals the attorney fee award.  As the Agreement's

language did not clearly and unambiguously waive husband's right to appeal, we consider whether

the attorney fee award was reasonable, readily conclude it was, and then grant wife's request for

more attorney fees for the expenses she incurred in defending this meritless appeal.

### BACKGROUND

The only issue here is the court's attorney fee award.  To evaluate the reasonableness of the

award, we briefly review the history between the parties.

Wife was visiting the United States on a tourist visa when she met husband on an online

dating service.  The two dated for a short time and then married in November 2018.

Eighteen months later, wife discovered that husband was receiving messages from the same dating service, introducing him to other active users on the site. After wife confronted him, husband tried to terminate the lease on the marital residence, asking wife to sign a notice to vacate form that cited "separation from spouse" as the reason for leaving the home. Wife refused to sign, and husband left the marital residence. Wife then filed for divorce on grounds of desertion in July 2020. Husband answered with a counterclaim, alleging in part that wife's "cruelty and emotional abuse" justified his departure from the marital home.

Four months after these initial filings, wife could no longer afford legal counsel, so her attorney had to withdraw from representing her any further on the divorce. About eight months later, however, wife borrowed $18,000 from her daughter so she could again retain her prior lawyer to assist with preparations for trial set for November 2021.

Upon being re-hired, wife's counsel issued discovery requests including interrogatories and requests for production in August 2021. Husband responded to wife's counsel on the day discovery was due, writing "I understand that the date to respond to your Discovery Request is today" and "I will consult my attorney . . . to provide a response." Wife, through counsel, provided husband another six days to comply with the discovery requests, but husband again failed to comply. Three days following the extended deadline, husband continued to claim that his attorney would contact wife's counsel soon. Wife's counsel never heard from any attorney.

Wife's counsel then filed a motion for sanctions in September 2021, and husband—now represented by counsel—filed a flurry of motions in response seeking leave to amend his counterclaim, to continue the trial, and for an extension of time to respond to wife's discovery requests. In particular, husband sought leave to amend his existing counterclaim to add an allegation that wife only sought to marry him to obtain a green card, calling the marriage a "green-card sham." He also suggested wife could be subject to criminal penalties for violating immigration

law.  After a hearing on the pending motions, the court denied husband's request for a continuance, granted the motion for leave to amend his counterclaim, issued an order to compel discovery responses from husband, and awarded wife $1,500 in attorney fees.[1]  The new allegations in the counterclaim led to depositions in October 2021, one month before trial.

On the first day of trial (about a year and a half after the parties' separation), wife presented her case-in-chief.  Husband did not pursue cross-examination to bolster his allegations of "cruelty and emotional abuse" or his claims that wife entered the marriage for fraudulent purposes.

At the close of day one, the court encouraged the parties to settle the matter.  They reached consensus that night and formally signed the Agreement the next morning, presenting it to the court before the second day of trial was set to begin.  The parties agreed to a no-fault divorce and settled all issues but attorney fees.  The Agreement stated that "[t]he parties agree that they shall reserve the issue of Wife's request for . . . attorney[] fees . . . for arguments to be heard by the Alexandria City Circuit Court."  Moreover, the parties "agree[d] to follow the ruling of the Court upon the Court making its determination regarding" attorney fees.

The court asked the parties whether they wanted to proceed with the matter of attorney fees that day, or whether they needed more time.  Wife's counsel said she was ready to proceed. Husband's counsel did not respond or make any objection.

Wife then argued that husband had unnecessarily delayed settlement of the divorce, forcing her to borrow money from her family to pay for legal fees.  She also argued that husband had refused to respond to discovery requests, requiring the court to issue an order to compel, and still provided incomplete documentation of his finances even after that order.  Finally, she argued that

---

[1] The court denied in part and granted in part the motion for extension of discovery, ordering that discovery be closed except for depositions about the new allegations in husband's amended counterclaim.

husband's annulment claim based on alleged "green card fraud"—added late in the proceedings and ultimately retracted by husband—had been "deeply insulting" to wife.

Husband responded that he lacked counsel when he was receiving discovery requests, claimed that he had requested mediation with wife, and argued that he had provided all financial information to which he had reasonable access. He also argued that negotiation was a normal part of the litigation process and that he was not responsible for wife's legal expenses because the court could not have granted a divorce until one year following separation anyway.

After considering the parties' arguments, the court awarded $33,948.64 in attorney fees to wife, finding that husband unnecessarily delayed settlement and resisted discovery. The court also noted that wife "can't be faulted for not being willing to sit down and have a four-way conference or mediation" when husband had failed to produce necessary discovery such that she was not "in possession of documents pertaining to debt and assets to facilitate a successful meeting." In sum, the judge stated that "efforts were made over and over again . . . to try and resolve this matter," but husband "was so resistant [to settling] that . . . it required a motion to compel and sanctions to get him to finally produce some, but not all," of the discovery wife had a right to receive.

Finally, the court deducted from the total fee award the fees expended before wife's motion for pendente lite relief (filed at the same time as her original complaint) as well as its prior fee award from the hearing on the motion for sanctions.

ANALYSIS

The only issue husband raises in this appeal is the court's award of attorney fees. His first assignment of error faults the court for awarding fees when the parties agreed to resolve the case as a no-fault divorce. He also assigns error to the court's decision to award fees "when Opposing Counsel was not Counsel of Record for all the time that was claimed." Wife argues that husband expressly waived any appeal of the attorney fee award in the Agreement. So we start there.

A.  Husband did not clearly and unambiguously waive his right to appeal.

We have long held that a party may waive by contract any right conferred by law or contract.  Agreements between divorcing spouses are no exception.  *Burke v. Burke*, 52 Va. App. 183, 193 (2008) ("[P]ublic policy does not prevent the parties to a [property settlement agreement] from contracting away their right to appellate review of matters addressed therein.").  This case does not question these general principles but asks us to determine whether specific language in an agreement was intended to waive all appellate review.  In other words, we must interpret a contract. "The interpretation of a contract presents a question of law subject to de novo review."  *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 283 Va. 624, 633 (2012).

"Waiver is the voluntary and intentional abandonment of a known legal right, advantage, or privilege."  *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 622 (1998).  It flows naturally from the requirement that a waiver of a right be knowing, intelligent, and voluntary and that an agreement to waive a right must be clear and unambiguous.  *See Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74 (1983) (explaining that the burden "rests on the party relying on a waiver . . . to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence" (quoting *Utica Mut. v. Nat. Indem.*, 210 Va. 769, 773 (1970))); *Roenke v. Va. Farm Bureau Mut. Ins. Co.*, 209 Va. 128, 135 (1968) ("A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights.").  In reviewing an agreement for evidence of waiver, "[c]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein."  *Southerland v. Estate of Southerland*, 249 Va. 584, 590 (1995) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)).

Our hesitation about inferring a waiver of rights absent express language is illustrated by *Pysell v. Keck*, 263 Va. 457 (2002).  The pre-marital agreement there stated that the parties' "rights to each other's property acquired by operation of law [i.e., statutory entitlements] shall be solely

determined and fixed by this agreement." *Id.* at 459. Other pertinent parts of the agreement recited that the parties intended to "continue to own as his or her separate property, all of the real, personal or mixed property which they individually own as of this date" and that they intended "individually acquire[d] additional property of a similar nature" to "be the individual property of the person acquiring the same." *Id.* After husband died, leaving a will that did not provide for wife, wife filed claims for an elective share of her husband's estate, a surviving spouse allowance, and certain other property. *Id.* The executor of husband's estate objected, arguing she had waived her rights to seek any portion of the estate by entering into the prenuptial agreement. *Id.* Our Supreme Court disagreed, interpreting the "unambiguous language" to conclude that "the only marital rights determined and fixed by the agreement were those of the husband and wife while they were living." *Id.* at 460-61; *see also Wilson v. Collins*, 27 Va. App. 411, 422 (1998) (finding that a property settlement agreement stating wife "shall receive" a portion of retirement benefits was not an "express negation" of husband's rights under federal law to reclaim benefits upon wife's remarriage).

Here, the parties' agreement contains no language expressly waiving a right to appeal the circuit court's attorney fee award. Rather than stating, for example, that the circuit court's determination would be non-appealable, the parties instead agreed to "reserve" the issue of attorney fees for argument before the circuit court and to "follow the ruling" of that court. *Cf. Burke*, 52 Va. App. at 186 (finding that a waiver was unambiguous when the parties stipulated that "any matter arising out of this agreement shall be decided" by the circuit court, *and* the court's decision "shall be final, conclusive and non-appealable"). While wife argues that an appeal conflicts with an agreement to follow the ruling of the circuit court, the general rule is that all final rulings of the circuit court are subject to change on appeal. *See* Code § 17.1-405(3) (authorizing appeals of "any final judgment, order, or decree of a circuit court in a civil matter"). Keeping that background

principle in mind, an agreement to "follow the ruling" of a lower court is at the very least

ambiguous as to whether the parties agreed to follow the ruling of the circuit court *assuming that*

*order was affirmed on appeal* or to follow the ruling with no further right of appeal.  This

ambiguous phrase fails to show husband clearly and unequivocally waived his right to appeal.

   B.  The circuit court's award of attorney fees was reasonable under the circumstances.

   Circuit courts have broad statutory authority to award attorney fees in a domestic relations

matter.  Code § 20-99; *Tyszcenko v. Donatelli*, 53 Va. App. 209, 222 (2008).  And in this case, the

parties expressly agreed to submit the issue of attorney fees to the trial court.  *See Cooley v. Cooley*,

220 Va. 749, 752 (1980) ("[M]arital property settlements entered into by competent parties upon

valid consideration . . . are favored in the law and such will be enforced unless their illegality is

clear and certain."); *Rutledge v. Rutledge*, 45 Va. App. 56, 61-62 (2005) (explaining that a court's

ruling on attorney fees must reflect the parties' post-nuptial agreement).[2]  In deciding whether to

award attorney fees in a divorce matter, a trial court may consider the "unique equities of each

case," and may consider factors including "ability to pay a fee, the party's degree of fault in

bringing about the dissolution of the marriage, and whether the party unnecessarily increased

litigation costs through unjustified conduct."  *Rinaldi v. Rinaldi*, 53 Va. App. 61, 78 (2008)

(citations omitted).  The award must be reasonable "under all of the circumstances revealed by the

record."  *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022) (quoting *Mayer v. Corso-Mayer*, 62 Va. App.

---

[2] Even still, husband inexplicably argues on brief that the court below lacked the authority to award attorney fees.  Ignoring the relevant domestic relations statutes and caselaw, he cites instead to Code § 8.01-643 involving writs of *quo warranto*.  Not only is husband foreclosed from changing positions on appeal; he has cited no relevant authority to support his novel contention, and we will not address it further.  *See Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006) ("A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory."); *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.").

713, 734 (2014)).  The trial court has wide latitude in this context, and we reverse only for abuse of discretion.  *Id.*

Here, the trial court awarded fees because of the delay in litigation husband caused by resisting discovery, forcing wife to move to compel, and then providing only *some* of the required documents in response to the court's order to compel.  The court noted that wife made repeated efforts to resolve the matter through counsel, then after she could no longer afford an attorney, by acting *pro se*.  And the record shows that husband's decision late in the litigation to seek annulment alleging that the marriage was fraudulent—a claim he eventually dropped—required additional costly depositions.

When a party unnecessarily prolongs litigation, it increases the amount of attorney fees the other party incurs and is a relevant factor for a trial court to consider in awarding attorney fees.  For example, we have found that attorney fees were justified when a wife caused delay in litigation by failing to complete auction procedures (after requesting the family business be auctioned), failing to execute a deed until compelled to do so, being slow to respond to discovery, and failing to produce an accounting even after receiving several continuances.  *See Northcutt v. Northcutt*, 39 Va. App. 192, 200 (2002).

Here, husband tries to deflect blame for this protracted litigation by claiming that (1) wife increased the cost of litigation by instituting the action before the expiration of the one-year statutory periods applicable to absolute divorce, and (2) the court, as a matter of public policy, should not penalize a litigant for refusing to settle.[3]

---

[3] Husband also suggests the court disregarded the relative financial position of the parties, but this factor only hurts him as the record shows he earned a sizable income while wife did not have enough money to pay her legal fees.  Further, husband's suggestion that the trial court improperly considered his desertion ignores that the court explicitly based its decision only on husband's lack of cooperation.

Husband's first argument rests on the premise that wife improperly filed for an absolute divorce (*a vinculo matrimonii*) on the grounds of desertion and separation before the applicable one-year statutory period had elapsed. In her complaint, however, wife requested a divorce from bed and board (*a mensa et thoro*) on the ground of desertion, "to be merged into a divorce *a vinculo matrimonii* after the expiration of the statutory time period." Nothing about this was improper. "An *a mensa* divorce, unlike an absolute divorce" for desertion or separation, "may be brought as soon as the grounds appear," and Virginia law allows either party to merge an *a mensa* divorce into a divorce *a vinculo* once the applicable statutory time period has passed.[4] John E. Byrnes & Margaret F. Brinig, *Virginia Domestic Relations Handbook* § 18.02 (2021); *see also* Code §§ 20-95, 20-121.

For his second argument, husband cites no authority holding that a circuit court cannot consider a former spouse's unreasonable resistance to settlement in deciding whether to award attorney fees. In fact, our Court has affirmed exactly that type of consideration on at least two prior occasions. *Daniel v. Daniel*, No. 1189-19-4, slip op. at 14-15 (Va. Ct. App. March 31, 2020); *Mosteller v. Brooks*, No. 2889-07-4, slip op. at 10-11 (Va. Ct. App. Dec. 23, 2008).[5] We find these decisions persuasive, as they follow the General Assembly's clear intention that circuit courts be empowered to award attorney fees as "equity and justice may require." Code § 20-99(6); *see also Mansfield v. Bernabei*, 284 Va. 116, 124 (2012) ("The importance of encouraging compromise and

---

[4] We note that wife also requested, "in the alternative, that [wife] be granted a divorce *a vinculo matrimonii* on the grounds of one (1) year's separation without cohabitation after the expiration of the necessary statutory period." This request for relief may well have been premature under Code § 20-91(9)(a), but it does not undermine her other claim for a divorce from bed and board. *See Harrell v. Harrell*, 272 Va. 652 (2006) (affirming the trial court for dismissing a complaint for divorce filed when "[wife] had not been separated from [husband] 'without interruption for one year' as required by the statute").

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012); *see* Rule 5A:1(f).

settlement is unquestioned in our jurisprudence."). We also note that the parties could have settled this matter on no-fault grounds six months after separation, because they had no children born of the marriage. *See* Code § 20-91(9)(a). Rather than consider this method of resolution—or any other— husband actively stalled the litigation by flouting the discovery process and advancing unsupported claims against wife.

Finally, husband alleges that the court erred by awarding attorney fees in a no-fault divorce and that it was improper for the court to only consider the evidence wife presented in the first day of trial and not his side of the story. We have already rejected the argument that a court errs by awarding attorney fees in a no-fault divorce. *Stratton v. Stratton*, 16 Va. App. 878, 884 (1993) ("We disagree with husband's contention that a party divorced upon no-fault grounds is not entitled to an award of attorney[] fees."); *see also Rinaldi*, 53 Va. App. at 78 ("[A]ppellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" (quoting *Kane v. Szymczak*, 41 Va. App. 365, 375 (2003))). And when the court asked if the parties wanted to take up the issue of attorney fees during what had been set aside for the second day of trial, husband agreed to proceed at that time and failed to put on any evidence when given the opportunity to do so.

In sum, we find no evidence to suggest that the circuit court's award of attorney fees was an abuse of discretion.

> C. Husband never argued below that the timing of wife's retention of counsel made the court's attorney fee award improper, so his second assignment of error is procedurally barred.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Rule 5A:18. The purpose of this rule "is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when

necessary." *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 131 (1989)).

Husband never made the objection expressed in his second assignment of error—that "The Trial Court Erred by awarding the Plaintiff excessive attorney[] fees . . . when Opposing Counsel was not Counsel of Record for all of the time that was claimed."[6] Instead, he suggests in this appeal, for the first time, that wife's counsel behaved unethically by representing wife while knowing she could not "afford" to pay and in anticipation of "the award of attorney fees." Thus, husband suggests wife's attorney improperly entered into a "contingent fee case, as her fee collection is contingent, o[n] not only wife receiving judgment, but also the Court ordering husband to pay the fees." There is no evidence in the record to support these allegations. Husband also alleges that "billable time should not be imputed onto Husband" from before wife's counsel re-entered her "notice of appearance" on September 15, 2021. But he does not provide any reason, or citation, for why the date on which a notice of appearance is filed has any relevance to the factors a trial court must consider in assessing the reasonableness of a fee award. For these reasons, we do not consider this assignment of error.

### D.  We award appellate attorney fees to wife.

This Court may award attorney fees incurred on appeal "based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay . . . as well as 'all the equities of the case.'" *Friedman v. Smith*, 68 Va. App. 529, 546 (2018) (quoting Rule 5A:30(b)). "In domestic relations

---

[6] Absent from husband's general statement at trial that he was "opposing the award" is any mention of the relevance of the date that wife's attorney became counsel of record in the litigation. His written objections on the final order of divorce that the fees were "excessive in amount, and duplicative as punitive measures," that they included "fees [that] were from discovery which were not relevant to the fee award from July to November 2020," and that "[t]his matter is a divorce from no-fault and the award makes complete liability on defendant" are similarly silent on this matter.

- 11 -

cases," the Court will award "appellate attorney[] fees when the arguments on appeal are 'not fairly debatable under any reasonable construction of the record or the governing legal principles.'" *Id.* (quoting *Brandau v. Brandau*, 52 Va. App. 632, 642 (2008)).

While husband did not waive the right to appeal the award of attorney fees in the marital property agreement, this fact alone does not shield him from the consequences of filing a meritless appeal. We award attorney fees here because all of husband's arguments are either waived or without merit. Put simply, no "reasonable construction of the record or the governing legal principles" could support them. *Id.* Therefore, we conclude wife is entitled to a reasonable amount of attorney fees incurred in connection with this appeal and remand this case to the circuit court to determine that amount.

## CONCLUSION

For these reasons, we affirm the circuit court's award of attorney fees in the underlying litigation. We remand the case to the circuit court solely for determination and award of the appropriate amount of appellate attorney fees.

*Affirmed and remanded.*