COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Causey and White
Argued at Alexandria, Virginia


MAENG JONG CHOI

v.      Record No. 0385-24-4

YOUNG AE CHOI

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
JANUARY 20, 2026


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

Minji Kim (Prosper Law PLLC, on briefs), for appellant.

Joseph T. Patton (DiPietro Law Group, PLLC, on brief), for
appellee.


The Circuit Court of Fairfax County entered a final order of divorce granting Young Ae

Choi ("wife") a divorce *a vinculo matrimonii* from Maeng Jong Choi ("husband") on the grounds

of separation for one year as required by Code § 20-91(A)(9)(a).  On appeal, husband argues that

the circuit court erred in its pendente lite order and its award of sanctions and attorney fees.

Husband also contests the circuit court's findings on the grounds for divorce, equitable

distribution, and spousal support.

BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

*Ugarte v. Ugarte*, 84 Va. App. 50, 57 (2025) (alteration in original) (quoting *Wolfe v. Shulan*

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

*Jiang*, 83 Va. App. 107, 111 (2025)). In this case, wife was the prevailing party before the circuit court.

Husband and wife married on June 7, 2005, and two children were born of the marriage. The parties separated on July 28, 2021. Approximately six months later, wife filed a complaint for divorce in the circuit court alleging desertion and cruelty. Wife moved for pendente lite relief including spousal and child support, exclusive use of the marital residence, legal and physical custody of the minor children, and attorney fees. Husband counterclaimed for divorce, also alleging grounds of desertion and mental cruelty, or, alternatively, because the parties lived separate and apart for at least one year.

At the time of separation, wife worked in three part-time jobs as an esthetician, including at Amenity Day Spa. She also attended school to become an acupuncturist. Husband worked as a driver for Uber and Lyft. He also earned income as a personal care aide for his mother from Eden Home Care.

## I. Pendente Lite Support

Husband requested that the circuit court grant the parties one-and-a-half to two hours for the pendente lite hearing because the parties needed the assistance of an interpreter. The circuit court denied the request, and allotted 30 minutes for the hearing "per local procedure." During the hearing, both wife and husband used the services of an interpreter; the hearing lasted 52 minutes.

Wife requested $6,329 pendente lite, including $4,604 for spousal support, and $1,725 for child support. The parties each submitted a monthly income and expense report. Wife's report claimed a total monthly gross income of $687 and total monthly expenses of $7,118. Husband's report claimed a total monthly gross income of $10,606 and total monthly expenses of $14,087, which included $2,650 in rent. Husband claimed $3,985 in business expenses, which included $1,000 in vehicle depreciation, $1,000 for a car loan, $900 in vehicle maintenance, and $1,600 in

- 2 -

gasoline. Husband stated that he was self-employed by his company MJC Transportation, under which he drove for Uber and Lyft.

Wife also submitted her and husband's 2021 tax documents. Wife entered three W-2s from her part-time jobs, totaling a gross annual income of $8,244.78. Wife submitted husband's 1099-K forms from 2021 for his work with Uber and Lyft, which showed gross annual incomes of $164,155.38 and $13,161.90, respectively. Husband's 2021 W-2 from Eden Home Care showed income of $56,252.65.

Wife reviewed her bank statements from September to November 2021 during the hearing. In addition to her salary deposits, wife acknowledged deposits from Coinbase. Wife testified that her Coinbase account contained money that she received from husband's grandmother. Wife also received a deposit from Virginia University of Integrative Medicine, stating it was an educational grant for her living expenses and tuition.

Husband acknowledged his gross annual income for 2021 was approximately $233,000, but husband also submitted six months of bank statements, from September 16, 2021 through February 16, 2022, which showed an average monthly income of approximately $10,000. Although he listed $2,650 a month for rent on the income and expense report, he testified that this amount included the $2,100 he paid for wife's rent. He lived with his mother, and paid her $500 in rent.

At the close of the hearing, the circuit court stated that it would "rely on the tax figures as set forth in 2021," and concluded that wife's gross monthly income was $687, husband's was $19,464 a month. The circuit court awarded wife $4,988 in pendente lite spousal support and $1,680 in pendente lite child support, for a total of $6,668.

On March 14, 2022, husband moved for reconsideration, arguing that his income was calculated at 28% rather than the 26% required by Code § 16.1-278.17:1(C). On April 21, 2022, the circuit court entered a pendente lite order nunc pro tunc, correcting the calculations. The circuit

court's corrected order granted wife spousal and child support, commencing January 26, 2022, in the amount of $4,604 and $1,725 respectively—for a total of $6,329. The court also calculated arrears in the amount of $12,648 for the period of January 26, 2022 to March 11, 2022. The circuit court reserved the issue of attorney fees for the equitable distribution hearing.[1]

Husband filed a supplemental motion for reconsideration. The next day, husband also moved to set aside the pendente lite order based on newly discovered evidence and fraud upon the court. Husband sought to offer wife's W-2 from another employer that showed a gross salary of $8,664.05, and that her yearly salary for 2021 was $19,573. In a letter to husband's counsel, wife's counsel responded that she did not have that W-2 at the time of the hearing.

While several of his motions were pending, husband also appealed the pendente lite order to this Court.[2] After noting his appeal, husband continued to file motions in the circuit court. Wife moved the circuit court to issue a rule to show cause for husband's failure to comply with the pendente lite order. Husband also moved to recuse the circuit court, and to stay the pendente lite order pending appeal. In this motion, husband questioned the circuit court judge's impartiality, and argued that the judge's alleged bias negatively impacted the outcome of this case. After hearing arguments regarding jurisdiction, the circuit court declined to act on husband's motions until this Court ruled on husband's appeal of the pendente lite motion.

While husband's appeal was pending before this Court, he moved for sanctions against wife, arguing that she had committed perjury and significantly misrepresented the parties' income. Husband also filed motions for contempt and criminal referral raising the same arguments. After

---

[1] Husband filed a motion for reconsideration before the circuit court entered its written order. The circuit court denied husband's request for a motion for reconsideration hearing on the pendente lite order as premature.

[2] This Court held that it did not have subject matter jurisdiction over husband's interlocutory appeal and dismissed his appeal. *Choi v. Choi*, 78 Va. App. 110 (2023) (order).

considering the parties' arguments, the circuit court denied husband's motion for sanctions. The circuit court again held that it did not have jurisdiction to issue a ruling, because husband's appeal of the pendente lite order was pending in this Court. The circuit court found that husband's motion sought reconsideration of the underlying pendente lite order.

Wife also moved for sanctions. Citing Code § 8.01-271.1, wife argued that husband's pleadings were not well grounded in law or fact, and sought to achieve an improper purpose of relitigating the pendente lite order. The parties presented arguments on the motion at the start of the divorce trial, and the circuit court took it under advisement.

## II. The Divorce Trial

Before the hearing on the grounds of divorce, the parties stipulated to the balances of their bank accounts and credit cards as of the date of separation. The parties' joint Bank of America account ending in x3084 had $6,906.45 as of the date of separation (July 28, 2021)—and only $129.43 on September 21, 2023. The parties also had life insurance policies on behalf of their children valued at $131,821 and $91,738, respectively. The parties agreed that they would keep their respective vehicles. Both husband and wife agreed to the 2021 income and the 2022 income for each party as shown on their respective tax documents. The parties also agreed that husband paid a total of $20,777 in support payments for wife for the period April 1, 2022 to October 31, 2023.

Husband's gross annual income was $233,569.93 in 2021, and $170,050.62 in 2022. Husband's Pentagon Federal Credit Union (Penfed) Checking Account had a balance of $4,487.74 at separation, and $1,651.97 on October 5, 2023. Husband also had a Coinbase[3] Account, which had a balance of zero when the parties separated, and $318.07 on September 10, 2023. Husband had one credit card that had a balance of $3,629.58 at separation and $9,732.21

_____

[3] Coinbase is an electronic trading platform for cryptocurrency.

- 5 -

on September 15, 2023. In July 2020, husband received a "Disaster Covid-19 Economic Injury" loan in the amount of $13,400 from the U.S. Small Business Administration (SBA loan). Husband made monthly payments of $100 towards the SBA loan; in September 2023, the balance of the SBA loan was $13,326.26. Husband had a life insurance policy with Primerica worth $540,000.

Wife's gross annual income was $16,908.83 in 2021, and $15,476.61 in 2022. Wife had a Bank of America checking account with a balance of $6,353.18 at separation, and $1,348.82 on August 11, 2023. Wife's Robinhood[4] account had $36,092.41 at separation, and $12,857.42 on July 31, 2023. Wife also had a Coinbase account with $804.16 at separation, and $5,973 on October 9, 2023. Wife had three credit cards with a balance of $1,799.44 when the parties separated; on October 9, 2023, the total balance on her credit cards was $19,185.14. Wife had a whole life insurance policy with MassMutual for $75,000.

Husband submitted an updated income and expense report. Husband claimed an average gross monthly income of $3,729, and monthly expenses of $5,537. Wife also submitted an updated monthly income and expense report. Her report claimed a total monthly gross income of $900 and total monthly expenses of $5,971.

Wife testified that she was only able to work two days a week due to her school schedule. In addition to her income from employment, she received educational financial aid, and had approximately $80,000 in student loan debt as of the date of the hearing. On the date of separation, wife had approximately $20,500 in student loan debt. Wife testified that she used half of her financial aid benefits for her educational costs, and the other half for living expenses. Wife also took loans from her brother, received financial support from her local community, and received government SNAP benefits.

---

[4] Robinhood is an electronic trading platform for different types of investments.

Scott Sevart, an expert in vocational rehabilitation, testified at trial. He interviewed wife and considered her education, training, and work history. Both husband and wife are Korean immigrants; in Korea, wife received a degree in childhood education and worked as a licensed practical nurse. After moving to the United States, wife was licensed as a nail technician, massage therapist, and tattoo artist. As a massage therapist, wife could earn between $47,000 and $62,000 annually if she worked full time, but Sevart was uncertain of whether these averages were for base pay or included commission. Once wife graduated from school and became an acupuncturist, her projected median wage was $60,500, and the mean wage approximately $72,000. Sevart testified that an acupuncturist could earn as much as $91,000.

Husband testified that as of the date of the hearing, he worked as an Uber driver and owned MJC Transportation. In September 2023, his Venmo account—which he used to collect payments—had a balance of approximately $3,000, which he transferred to his PenFed account. Husband testified that his "small business expenses total 50 percent" of his income.

Husband stopped working as a home health care aide in February 2022; until that point, he deposited that salary into a joint bank account at Truist he shared with his brother and sister. In his testimony, husband acknowledged that he often spent time at casinos. Husband alleged he had health problems, including obstructive sleep apnea syndrome, and took medication for his heart and thyroid. He testified that his health conditions made work more difficult and impacted his ability to make money. He had not seen the children in over a year, which he testified also negatively impacted his health.

Husband described the parties' standard of living during the marriage as middle class, and that he was the primary financial provider for the family. When asked, "how is your business lately," husband responded, "I'm not doing very good." During the hearing, husband requested that the circuit court confirm his right to request spousal support in the future.

- 7 -

Young Ok Choi, husband's sister ("sister"), testified that since 2022, husband had lived with her and their mother. Husband initially contributed $1,000 monthly towards rent and utilities but later reduced it to $500 due to his medical bills. Sister testified about the Truist bank account she shared with husband. Husband deposited the pay he earned from working as their mother's home health aide into this account from June 2021 until June 2022, which was a few months after the pendente lite hearing.

Won Choi, husband's brother, testified that he was an Army veteran and worked on an Army base as a civilian. Although Won Choi was no longer active duty, he wore his military uniform when he testified; he acknowledged that he did not wear the uniform on a daily basis when he worked. In 2022, Won Choi also worked for Eden Home Care as a part-time health care aide for their mother, when husband developed issues with his health. He earned approximately $29,000 in 2022; he deposited his salary into the joint account shared by husband and Young Choi. Won Choi testified that he gave this income to his sister as a gift, and filed a gift tax return four days before trial. Won Choi explained that he did this to make it clear that *he* earned this income—*not* husband.

### III. Award of Sanctions

After the hearing, the circuit court awarded wife sanctions in the form of attorney fees under Code § 8.01-271.1. The circuit court held that husband's counsel endorsed and signed the numerous pleadings filed after the pendente lite order, but none were well-grounded in law or fact, as husband offered no evidence to support his allegations that wife manipulated the evidence for financial gain or engaged in fraud on the court. Husband's counsel also continued endorsing and filing motions in the circuit court when the circuit court was without jurisdiction due to his appeal of the pendente lite order to this Court. The circuit court also held that no evidence supported husband's motion for an emergency recusal, as there was no evidence that

the circuit court was biased against him, denied him a fair hearing, or interfered with the appeal process. In addition, the circuit court also held that the filings, which occurred over a seven-month period, were filed "to harass or to needlessly increase the cost of litigation." The circuit court awarded wife $15,300.75 in attorney fees, because she established that she expended that when responding to husband's filings.

IV. Final Decree of Divorce

The circuit court held that husband and wife had lived separate and apart for more than one year, and awarded a divorce on that ground. In making the equitable distribution award, the circuit court considered the evidence received and the parties' joint stipulations under the Code § 20-107.3(E) factors.[5] The circuit court determined that the three checking accounts were marital property. The circuit court awarded wife $129.43 from the joint Bank of America account and $1,349 from her Bank of America account, and awarded husband $1,651.97 from his Penfed account. The circuit court determined that wife's Robinhood account and Coinbase account were marital property, and it awarded her the balances of $12,857.42 and $804.16 (respectively). Husband retained the $318.07 in his Coinbase account as his separate property.

The circuit court held that each party was responsible for the debt on his or her credit cards. The circuit court also held that wife's student loans, totaling $75,245, were hybrid debt—specifically that $20,500 was marital debt, and the remaining amount ($54,745) was wife's separate debt. The circuit court ordered husband to pay wife $10,250 for his share of the marital portion of the student loans within 90 days of the order. The circuit court stated that it had not received "any additional evidence of marital property or debt." It thus made no further equitable distribution decisions.

---

[5] Regarding the Code § 20-107.3(E) factors, the circuit court referred to its discussion of the factors in Code § 20-107.1(E), because they overlapped in large part with the factors of Code § 20-107.3(E).

The record indicates that the circuit court considered the Code § 20-107.1(E) factors to award spousal support. The circuit court held that wife offered credible evidence that she had limited resources insufficient to meet her needs. The circuit court found the evidence supported the parties' stipulation that wife's gross monthly income was $1,289. The circuit court held that husband did not meet his burden of establishing that some income should be imputed to wife because she worked part-time. However, she had done so throughout the marriage, and was in school to enhance her future income potential.

The circuit court determined that husband's evidence of his income, including the testimony of his brother and sister, was not credible. In a footnote, the circuit court determined that Won Choi's decision to wear his military uniform when not on active duty was "a deliberate attempt to bolster his testimony." The parties stipulated that husband's tax records showed an income of $170,050.62 for 2022. The circuit court found that the $3,842 husband received in his Venmo account was also income for purposes of calculating support. The circuit court noted that Won Choi cared for their mother, but deposited his income into an account that husband shared with their sister, Young Choi. The circuit court imputed the income that Won Choi earned from Eden Home Care to husband because it was undisputed that the funds were deposited into an account held in the name of husband and his sister. The Court held that husband's total income for 2021 was $198,072. After reviewing the evidence, the circuit court also found that husband's annual expenses, including car payment, insurance, cell phone, car maintenance and administrative costs, totaled $21,656, resulting in a net annual income of $176,416 for 2021.

The circuit court acknowledged that husband was self-employed, and deducted reasonable business expenses from his total income. Although husband testified that he used "about 50%" for business expenses, the circuit court found that he failed to present evidence to support that high of a percentage.

- 10 -

The circuit court found that the parties were married for 16 years and 1 month and that husband testified that the parties lived a "middle class" standard of living during the marriage. The circuit court held that neither party suffered from any physical or mental health conditions nor were there any special circumstances of the family that warranted special consideration regarding support. Although wife worked some during the marriage, the circuit court held that husband was the primary source of monetary support for the parties during the marriage while wife was the primary source of the non-monetary contributions to the well-being of the family. The circuit court held that wife's earning potential would increase when she completed her acupuncturist education, but that it "did not have sufficient evidence before it to make any determination as to what the circumstances might be as to her income in the reasonably foreseeable future." The circuit court awarded wife $3,000 in monthly spousal support. The circuit court stated that the "monthly spousal support may be modifiable upon a material change of circumstances."

The circuit court awarded child support based on the child support guidelines for sole custody. After calculating husband's gross monthly income at $14,701 and wife's gross monthly income at $1,289, the circuit court considered the two children's needs and awarded $1,482 in child support. The circuit court also awarded wife $30,000 in attorney fees.

The circuit court entered the final divorce decree on February 7, 2024. In addition to incorporating the awards outlined above, the circuit court also ordered husband to maintain term life insurance in the amount of $540,000, with the children as beneficiaries. After crediting husband with the support payments he had made since the pendente lite order, the circuit court fixed the arrearages in spousal and child support from January 26, 2022 to February 29, 2024 at $90,455.35.

On February 25, 2024, husband moved for reconsideration. On March 1, 2024, the circuit court determined that it was without jurisdiction to consider the motion. Husband now appeals to this Court.

ANALYSIS

I. Due Process

On appeal, husband argues that the circuit court "erred in denying [husband]'s request to allocate sufficient time for a pendente lite hearing due to interpretation requirement." He contends that "the Fairfax Circuit Court Practice Manual's 30-minute rule for a *pendente lite* hearing is, as applied to the facts of this case, violates due process and Va. Code § 8.01-4 when interpretation is required."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (emphases in original) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Although husband requested one-and-a-half to two hours for the hearing, he did not object to the circuit court's order denying the request. The record reflects that the hearing still lasted beyond the 30 minutes set by the circuit court, and husband did not object when the hearing ended. Husband raised the issue again in his motion for reconsideration, but his motion did not explain how he was prejudiced by the time limitation or what evidence he would have presented

- 12 -

if afforded more time. Furthermore, he did not allege that the circuit court violated his due process rights. He only alleged that wife was better able to commit "deception" with a shorter hearing. Therefore, husband did not preserve his argument that the 30-minute time limit violated his due process rights. *See* Rule 5A:18. Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, husband has not invoked either exception, and we do not consider them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). Therefore, this Court simply cannot reach this assignment of error.

## II. Pendente Lite Support[6]

Husband next argues that the circuit court "erred in adopting the [wife]'s proposed order and numbers in entirety without examining all evidence and in entering a clearly erroneous pendente lite order on April 21, 2022." Husband challenges the amount of income that the circuit court considered in awarding wife pendente lite child support and spousal support. Husband contends that the circuit court erred in failing to deduct his business expenses in determining his total net income—and in failing to consider all of wife's income (as evidenced by deposits to wife's bank account).

The decision "whether to grant *pendente lite* support lies within the sound discretion of the trial judge." *Frazer v. Frazer*, 23 Va. App. 358, 375 (1996) (quoting *Weizenbaum v. Weizenbaum*, 12 Va. App. 899, 905 (1991)). The Supreme Court has stated that when a circuit court has discretion, it is not "free to simply act in any way it may deem desirable under the circumstances." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 92 (2021). Rather, "the circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 93 (quoting *Landrum v. Chippenham and*

---

[6] While the pendente lite order was not an immediately appealable order, the rulings it contained are subject to appeal after the circuit court entered final judgment. *See Pinkard v. Pinkard*, 12 Va. App. 848, 853 (1991).

- 13 -

*Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).  In a divorce proceeding, a circuit court has the power to render a pendente lite order "at any time pending a suit . . . to compel a spouse to pay any sums necessary for the maintenance and support of the petitioning spouse."  Code § 20-103(A)(i).  The circuit court can also award child "support, calculated in accordance with § 20-108.2, for any child of the parties to whom a duty of support is owed."  Code § 20-103(A)(v).

The record before this Court on appeal shows that the circuit court received evidence and heard testimony as to the parties' various sources of income and expenses over a several year period.  Wife testified that she received a deposit from Coinbase and deposits from Amenity Day Spa, where she worked part-time.  Husband testified at the March 11, 2022 hearing and acknowledged that his gross annual income in 2021 was $233,000, but, at the same time, he also testified that his monthly gross income was $10,606.  Husband claimed reasonable business expenses including $1,600 monthly in gasoline, $1,000 in a monthly loan payment, $1,000 monthly in automobile depreciation, and $900 monthly in vehicle maintenance.  Based on the record before it, including husband's inconsistent testimony, the circuit court did not abuse its discretion when it determined that the parties' monthly gross income was best reflected by their 2021 tax records.  Therefore, we cannot find that the circuit court abused its discretion in its award to wife of pendente lite support.[7]

### III.  Grounds for Divorce

Husband argues that the "trial court erred in granting [wife] divorce based on one (1) year separation when only [husband], not [wife], requested the precise relief in his pleading."

---

[7] Husband also contends that the circuit court erred in failing to hold a hearing on his motion to set aside the pendente lite order.  Regardless of whether the circuit court had jurisdiction to hold a hearing after husband filed an appeal, argument on a reconsideration motion "will be heard orally only at the request of the court."  Rule 4:15(d).  Thus, the circuit court did not err when it did not schedule a hearing on husband's motion to set aside the pendente lite order.

"[W]here dual or multiple grounds for divorce exist, the trial [court] can use [its] sound discretion to select the grounds upon which [it] will grant the divorce." *Payne v. Payne*, 77 Va. App. 570, 584 (2023) (alterations in original) (quoting *Williams v. Williams*, 14 Va. App. 217, 220 (1992)). "It is well settled that a circuit court's determination of matters that lie within its discretion is reversible on appeal only for an abuse of that discretion." *Ugarte*, 84 Va. App. at 69. Furthermore, a circuit court's finding of fact will "not be set aside unless plainly wrong or without evidence to support it." *Payne*, 77 Va. App. at 584 (quoting *Hughes v. Hughes*, 33 Va. App. 141, 146 (2000)); Code § 8.01-680.

"A litigant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory,' or else such arguments are waived." *Amazon Logistics, Inc. v. Va. Emp. Comm'n*, 304 Va. 107, 114-15 (2025) (per curiam) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). This doctrine "applies both to assertions of fact and law" and "precludes litigants from 'playing fast and loose' with the courts . . . depending on their perceived self-interests." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (quoting *Babcock & Wilcox v. Areva*, 292 Va. 165, 204-05 (2016)).

Husband argues that the circuit court erred in granting wife a divorce on the grounds of a one-year separation, even though she did not request this relief. However, husband sought divorce on that ground himself and invited the circuit court to make that finding, so husband cannot now argue that the circuit court erred in granting the very relief that he requested. Consequently, we certainly cannot say that the circuit court abused its discretion under these circumstances. *Payne*, 77 Va. App. at 584.

## IV. Equitable Distribution

Husband argues that the circuit court erred in failing to classify and distribute his Small Business Administration ("SBA") loan.

"On review, a circuit court's 'equitable distribution award will not be overturned unless the [appellate court] finds an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" *Ugarte*, 84 Va. App. at 72 (alteration in original) (quoting *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020)). "In reviewing an equitable distribution award on appeal, we have recognized that the [circuit] court's job is a difficult one, and we rely heavily on the discretion of the [circuit court] judge in weighing the many considerations and circumstances that are presented in each case." *Id.* (alterations in original) (quoting *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021)).

Accordingly, we will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon*, 71 Va. App. at 717-18 (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "However, to the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo* on appeal." *Id.*

"In making an equitable distribution of property under [Code § 20-107.3(A)], the [circuit] court first must classify the property as separate, marital, or part separate and part marital." *Ugarte*, 84 Va. App. at 72 (alterations in original) (quoting *Lightburn v. Lightburn*, 22 Va. App. 612, 616 (1996)). Marital debt includes:

> all debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent. However, to the extent that a party can show by a preponderance of the evidence that the debt, or a portion thereof, was incurred, or the proceeds secured by incurring the debt were used, in whole or in part, for a nonmarital purpose, the court may designate the entire debt as separate or a portion of the debt as marital and a portion of the debt as separate.

Code § 20-107.3(A)(5). Here, husband offered evidence that he obtained the SBA loan during the marriage and used the funds to make payments on his bills, because he was unable to earn income as a driver during the pandemic. The circuit court did not classify husband's SBA loan in its December 15, 2023 letter opinion or the final divorce decree. After classifying both parties' credit card accounts, wife's student loans, and husband's car loan, the circuit court's opinion states, "The Court did not receive any additional evidence of marital property or debt other than the evidence identified above." However, husband entered his July 1, 2020 SBA loan authorization agreement—made during the marriage—into evidence, and therefore the circuit court erred when it failed to classify the loan as either marital or separate debt. Therefore, we must remand this matter for the circuit court to determine whether the SBA loan is marital property or separate property.

Husband also argues that the "trial court erred in its failure to consider each of the factors set out in Va. Code § 20-107.3(E) with written findings of fact under each statutory factor." He contends that the circuit court's opinion letter and the final order "lack specific findings of fact under each of the statutory factors in the Va. Code § 20-107.3(E) that support the Court's distribution of marital assets and marital debts."

The circuit court must consider the factors enumerated in Code § 20-107.3(E) when equitably distributing marital assets. Code § 20-107.3(E). "The appropriate consideration of the factors entails more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed." *Gottlieb v. Gottlieb*, 19 Va. App. 77, 94 (1994) (quoting *Alphin v. Alphin*, 15 Va. App. 395, 405 (1992)). Even so, the trial court is not required "to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Id.* (quoting *Alphin*, 15 Va. App. at 405). "[W]hen a trial judge fails to articulate sufficiently the consideration he or she has given to the statutory criteria, 'we must examine the

- 17 -

record to determine if the award is supported by evidence relevant to those factors.'" *Id.* (quoting *Alphin*, 15 Va. App. at 405).

In its letter opinion outlining the equitable distribution award, the circuit court explicitly stated that it considered the Code § 20-107.3(E) factors. Although the circuit court combined its discussion of the relevant factors with its analysis of the Code § 20-107.1 factors, the circuit court clearly made "more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed." *Alphin*, 15 Va. App. at 405. The circuit court expressly considered the contributions—monetary and non-monetary—of each party to the well-being of the family, noting that although wife did work outside the home at times during the marriage, husband was the primary source of monetary support for the family for the duration of the marriage. The circuit court noted the duration of the marriage, as well as the parties' age and physical condition, finding specifically that husband's claims of serious health issues were not credible. Although husband lists the Code § 20-107.3(E) factors that are different from the Code § 20-107.1(E) factors, he does not argue that the award would have been different if the circuit court had explicitly considered these factors. Therefore, the record shows that the circuit court adequately considered the Code § 20-107.3(E) factors.

Although the circuit court's discussion of the statutory factors was adequate, we must still reverse the equitable distribution award and remand the matter to the circuit court to reassess and redetermine the equitable distribution award, after determining whether husband's SBA loan is marital debt, his separate debt, or a combination of marital debt and husband's separate debt.

V. Spousal Support

Husband also assigns error to the amount and duration of the circuit court's spousal support award and the evidence that the circuit court relied on to make the spousal support award.[8] "[W]here an equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings.'" *Robinson v. Robinson*, 46 Va. App. 652, 671 (2005) (*en banc*) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)). Therefore, because the equitable distribution award may well affect the award of spousal support in its amount and duration, we also must reverse the award of spousal support and remand it for reconsideration and redetermination, given the change in equitable distribution. *See Stumbo v. Stumbo*, 20 Va. App. 685, 694 (1995) (reversing and remanding the spousal support award where the trial court erred by failing to classify and value all marital property). Upon remand, the circuit court must use the most recent data in the record for income and expenses that the parties could provide for calculating the amount and duration of spousal support, including any arrearages (and credits toward those arrearages).[9]

_____

[8] Husband also argues that the "trial court erred in determining (a) whether to impute to [husband] 3rd parties' employment income and gift money and (b) the amount of imputed income" and "violated the 3rd parties' property rights under the U.S. and Virginia Constitutions." The circuit court did not abuse its discretion when it counted the money that husband's brother earned by caring for their mother as husband's imputed income. Husband's brother, Won Choi, earned the money by caring for their mother after husband's health issues prevented him from doing so (and receiving payments for caring for her), and Won Choi placed those earnings into an account not in his name, but an account shared by husband and their sister. Therefore, we cannot say that the circuit court abused its discretion when it imputed the money—earned by Won Choi and placed into a joint account shared by husband and his sister— to husband as husband's income.

[9] "In view of the remand for reconsideration of the equitable distribution award, the trial court must also redetermine its award of child support." *Venable v. Venable*, 2 Va. App. 178, 186 (1986). Furthermore, if upon remand in the circuit court, the amount of income for either or both spouses changes, the circuit court will need to redetermine the amount of child support ordered.

Husband further argues that the "trial court erred in failing to grant and make a reservation of [husband]'s right to seek future spousal support although [husband] specifically requested it." "We have previously held that a trial court is mandated to grant this reservation when a party requests it." *Payne*, 77 Va. App. at 591-92; *see also Bacon v. Bacon*, 3 Va. App. 484, 491 (1986) (holding that "it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support"). "But absent such request, the award of a reservation is entirely within the discretion of the trial court." *Id.* Here, husband explicitly requested a reservation of the right to request future spousal support. The circuit court erred in failing to include the reservation of the right to receive spousal support in the final decree so we direct the circuit court to do so upon remand.

## VI. Life Insurance

Husband argues that "the trial court erred in ordering [husband] to get WHOLE life insurance, change in coverage, rather than maintaining the existing TERM life insurance, in violation of Va. Code § 20-107.1:1." (Emphasis in original).

A "court may order a party to . . . maintain any existing life insurance policy on the insured party's life that was purchased during the marriage, is issued through the insured's employment, or is within effective control of the insured." Code § 20-107.1:1(A). A court can implement such an order only if "the payee has been designated as a beneficiary of such policy during the marriage." *Id.*

The final decree orders husband to "maintain *term* life insurance in the amount of $540,000 on his life, naming the children as equal beneficiaries thereof, and [w]ife as the trustee to manage such funds for the benefit of the minor children." (Emphasis added). The circuit court's order did not order husband to obtain a whole life insurance policy, but rather just to maintain an existing term life insurance policy where the children were made the beneficiaries of the policy during the

marriage. Therefore, husband's assignment of error is insufficient because it does not address the circuit court's actual ruling. *See* Rule 5A:20(c)(2).

## VII. Witness Credibility

Husband next contends that the circuit court erred in making a negative credibility determination about his witness, Won Choi, because Won Choi wore his military uniform. The "credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015)). "This Court is bound by the credibility findings of the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013). The circuit court found that by wearing his military uniform while no longer on active duty, Won Choi's choice of dress "was not well-received and to the extent his choice was an effort to telegraph an air of legitimacy to his testimony, that effort failed." Considering the deference that we must give to the circuit court's consideration of witness testimony and other evidence in the record, we certainly cannot say that the circuit court's credibility determinations were plainly wrong.

## VIII. Sanctions Award

Husband argues that the "trial court erred in its findings and conclusions in the Order Regarding Plaintiff's Motion for Sanctions while disregarding the Defendant's valid opposition, exhibits and argument."

We review a trial court's award of sanctions under Code § 8.01-271.1 for an abuse of discretion. *Shebelskie v. Brown*, 287 Va. 18, 26 (2014). "The reason for applying that standard is that we are usually confronted with a mixed question of law and fact in such cases." *Ford Motor Co. v. Benitez*, 273 Va. 242, 249 (2007). A court's imposition of sanctions will be reversed only if the "court abused its discretion in 1) its decision to sanction the litigant, or 2) in

the court's choice of the particular sanction employed." *AV Auto., LLC v. Gebreyessus*, 301 Va. 321, 329 (2022) (quoting *Switzer v. Switzer*, 273 Va. 326, 331 (2007)). An abuse of discretion occurs "only 'when reasonable jurists could not differ'" about the proper decision. *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008) (quoting *Robbins v. Robbins*, 48 Va. App. 466, 482 (2006)).

Code § 8.01-271.1(B) states:

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a party violates this certification, a court "shall impose" an appropriate sanction, which may include an order to pay reasonable attorney fees. Code § 8.01-271.1(D).

The circuit court thoroughly outlined the multiple motions husband filed after the pendente lite order—some of which he filed in the circuit court while his appeal of the pendente lite order to this Court was already pending. Husband accused wife and her counsel of deliberately misleading the circuit court and misrepresenting evidence. During the hearings, husband offered no evidence supporting his allegations so the circuit court did not err in holding that his motions were not founded in law or fact. Husband's unsupported allegations and many motions increased wife's litigation costs, and the circuit court was entitled to find that husband's purpose was to harass or to delay. Thus, under the highly deferential standard of review which this Court must apply, we simply cannot say that the circuit court abused its discretion in awarding sanctions against husband under Code § 8.01-271.1—and ordering husband's counsel to pay wife $15,300.75 for attorney fees expended by wife in defending against numerous pleadings filed by husband "to harass or to needlessly increase the cost of litigation."

## IX. Attorney Fees

In addition, husband argues that the trial court erred in awarding $30,000 in additional attorney fees to wife "as the circumstances and equities do not justify such award." He argues, "The circumstances and equities do not justify award of $30,000 in fees to [wife]."

"Circuit courts have broad statutory authority to award attorney fees in a domestic relations matter." *Yazdani v. Sazegar*, 76 Va. App. 261, 272 (2022); *see also* Code § 20-99. "[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *Allen v. Allen*, 66 Va. App. 586, 601 (2016) (alteration in original) (quoting *Richardson v. Richardson*, 30 Va. App. 341, 351 (1999)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." *Conley v. Bonasera*, 72 Va. App. 337, 350 (2020) (alterations in original) (quoting *McGinnis*, 1 Va. App. at 277). "Factors to be considered may include a party's ability to pay a fee, the party's degree of fault in bringing about the dissolution of the marriage, and whether the party unnecessarily increased litigation costs through unjustified conduct." *Rinaldi v. Rinaldi*, 53 Va. App. 61, 78 (2008) (citations omitted).

The circuit court explicitly considered "the equities of the case" in awarding wife her attorney fees. During the trial, the circuit court heard evidence of the financial position of the parties, and wife's attorney submitted an affidavit and detailed itemization of the attorney fees totaling $66,993.19. Given the financial disparity between the parties and given husband's actions that "increased litigation costs through unjustified conduct," we certainly cannot say that the circuit court abused its discretion in its decision to award $30,000 in attorney fees to wife. *Id.*

## X. Motion to Reconsider

Husband also argues that the "trial court erred in its decision on the [husband]'s Motion to Reconsider." Husband contends that the circuit court "had ample time to review the objections."

- 23 -

An appellate court reviews the denial of a motion to reconsider for an abuse of discretion. *Winston v. Commonwealth*, 268 Va. 564, 620 (2004). The circuit court entered the final divorce decree on February 7, 2024. Husband filed his motion for reconsideration on February 25, 2024, three days before the circuit court lost jurisdiction over the case. Rule 1:1(a) (circuit courts retain jurisdiction for 21 days after entry of the final order). Neither wife nor the circuit court was apparently even aware of the motion to reconsider until February 29, 2024—one day after the circuit court lost jurisdiction. The circuit court then dismissed the motion, finding it lacked jurisdiction to consider it because husband "failed to ensure that his [m]otion was handled expeditiously." In its order addressing husband's motion to reconsider, the circuit court emphasized that there was "no evidence in the file that husband sought a suspending order either in writing or through an appearance at calendar control." In his brief to this Court, husband does not dispute that the circuit court no longer had jurisdiction at the time it reviewed his motion and dismissed it. Therefore, this Court cannot reach the merits of husband's assignment of error on his motion to reconsider as the circuit court had lost jurisdiction to rule on husband's motion when it did so.

## XI. Constitutional Rights

Finally, husband argues that the "trial court erred in making decisions that substantially and unjustifiably favored the [wife] and unfairly disfavored the [husband] who has serious health conditions." He contends that the "trial court's erroneous decisions infringe upon the [husband]'s due process rights and fundamental property rights under the U.S. Constitution[] and the Constitution[] of Virginia."

"Constitutional arguments present questions of law that this Court reviews *de novo*." *Farmer v. Commonwealth*, 61 Va. App. 402, 410 (2013) (quoting *D.L.G. v. Commonwealth*, 60 Va. App. 77, 81 (2012)). In support of his argument, husband restates his claims regarding the pendente lite dispute, the parties' income, and his alleged health issues. Having already now

affirmed the circuit court's findings on those issues, we see no evidence of favoritism in the record or violations of husband's due process rights. Therefore, we do not disturb the circuit court's decision.

## XII. Appellate Attorney Fees

Both parties seek an award of their respective attorney fees on appeal. "We award appellate fees only in the unusual case where the arguments on appeal are 'not fairly debatable under any reasonable construction of the record or the governing legal principles. We have no reluctance imposing fees in such circumstances.'" *Cabral v. Cabral*, 62 Va. App. 600, 613 n.10 (2013) (quoting *Brandau*, 52 Va. App. at 642). Applying this standard and given that both parties have partially prevailed on appeal, we deny both parties' requests for appellate attorney fees. *See Sfreddo v. Sfreddo*, 59 Va. App. 471, 495 (2012).

## CONCLUSION

In short, we affirm the circuit court's grant of a divorce under the grounds of living separate and apart for one year. We hold that the circuit court's discussion of the statutory factors contained in Code § 20-107.3(E) was adequate. However, we reverse the circuit court's equitable distribution award because the circuit court failed to classify husband's SBA loan as marital, separate, or hybrid debt. We also conclude that the circuit court erred when it failed to reserve husband's right to seek spousal support in the future. In addition, we reverse the circuit court's award of permanent spousal support because spousal support (and child support) must be recalculated after equitable distribution has been reassessed. Therefore, for all of the foregoing reasons, we remand this matter to the circuit court for it to reassess and redetermine equitable distribution after classifying the SBA loan—and then for it also to recalculate the amount and duration of husband's support obligations.

*Affirmed in part and reversed and remanded in part.*